MR. JUSTICE GROVES
dissenting:
I respectfully dissent.
The majority opinion narrowly construes Colo. Const. Art. XVI § 5 which reads:
“The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.”
The narrow construction ignores the grammar and twists the sense of this provision. The provision establishes that the waters of the state are the property of the public and are dedicated to the use of the people of the state. The clause “subject to appropriation as hereinafter provided” *145 functions as a caveat establishing that appropriation for a beneficial use is superior to other uses. The clause in itself does not limit other uses.
At the beginning of this century, Justice Bailey in a dissenting opinion, set forth the same interpretation of the constitutional provision:
“This makes the waters of every natural stream public. They are dedicated to the use of the people, to be used by them in such manner as they see fit, subject only to one condition; that of the right of appropriation for beneficial purposes. Until the waters are appropriated and diverted from the stream, they belong to the public.
“No stronger words could have been used by the people than are used in this declaration. It is idle to say that the waters of the streams are dedicated to the public for the purpose of appropriation, because those are not the words of the constitution. It is a grant made subject to that right.
The contention that the water of a stream is dedicated to the people for the purpose of appropriating it must fall of its own weight, because, immediately upon its being appropriated, it no longer belongs to the people. The appropriated water belongs to the appropriator. If the dedication to the people was for the sole purpose of appropriation, there is no dedication. The dedication does not go into effect until the appropriation is made, and the moment it is made the water ceases to belong to the people, but becomes the property of the appropriator. So, the right does not exist until the appropriation is made, and it ceases to exist the moment the appropriation is made. It has therefore no existence at all.” Dissenting opinion Hartman v. Tresise, 36 Colo. 146, 84 P. 685 (1906).
The constitutional language in no way supports any intent to provide for exclusive private use of public waters. If the authors had intended to provide that non-navigable streams were to be for such exclusive use (subject to appropriation), surely they could have expressed that intent more clearly then by stating that “[t]he water of every natural stream ... is ... the property of the public, and . . . dedicated to the use of the people . . . .” (Emphasis added).
Besides disagreeing with the majority’s interpretation of Colo. Const. Art. XVI, § 6, I take issue with the proposition that Hartman, supra, sets any precedent which would control the outcome in this case.
Hartman concerned the constitutionality of a statute which purported to give the public the right to fish in any stream in the state, subject to actions for trespass for damages done to the privately owned banks of a stream. The facts of the case are not explained clearly. Nonetheless, it appears that the defendant entered the plaintiffs land to fish in a natural stream flowing there. Both the statute and the defendant’s conduct concerned trespass to land. The majority in Hartman held only that the defendant had no right to fish in a stream whose beds and banks were privately owned and that the legislative attempt to create public easements *146 on private land to facilitate access to streams constituted a taking of private property without compensation. The opinion reads:
“Plaintiff owns lands bordering on both banks of natural streams. As between him and the defendant, he owns the right of fishery in their waters within his outer boundaries. As between them, plaintiff also owns the beds of the streams just as much as he owns the adjacent banks or the soil anywhere within his surface lines. It necessarily follows that defendant has no right of fishery within plaintiffs enclosure.
“But if he does, he certainly has no easement over any portion of plaintiffs property, either in the beds of the streams or the adjacent soil, for the purpose of reaching the streams. In the enjoyment of his private property plaintiff is protected, both by federal law and the state constitution, against encroachment by defendant. Neither the state nor an individual nor a corporation to whom the right of eminent domain is delegated, can take private property for public use without just compensation; much less can the state, without any compensation at all, take the private property of one, and give it to another citizen to be enjoyed by the latter for a mere private use.”
No determination as to the rights to use of streams in the absence of a trespass to land was necessary. Consequently, the statements to the effect that Colo. Const. Art. XVI, § 6 only provides for a right of appropriation are merely dicta, not precedent. In his concurring opinion, Justice Gunter recognized the majority’s statements as surplusage:
“I do not think it necessary in reaching this conclusion [that of the majority] to go into the important question of riparian rights, upon which the court divides.”
Additionally, the majority opinion here relies heavily upon the common law rule that one who owns the surface of the land has the exclusive right to everything above it (cujus est solum, ejus est usque ad coelum). The doctrine allegedly was implicitly adopted in Hartman.
Initially, I would question whether the rights to the use of water in a state which has adopted the appropriation system should be determined by importing a doctrine formulated with reference to a different set of circumstances.
Secondly, it is not clear that Hartman adopted this rule. The majority opinion does not indicate precisely the basis for its belief that the doctrine was adopted in Hartman. However, the language that might suggest adoption of such a theory is:
“. . . plaintiff also owns the beds of the streams just as much as he owns the adjacent banks or the soil anywhere within his surface lines. It necessarily follows that defendant has no right of fishery within plaintiffs enclosure.”
This language could just as well mean that the court concluded that the defendant could not fish without trespassing, and that since trespassing *147 was forbidden, so was fishing.
Given the ambiguity, it does not appear sound to attribute a common law theory unnecessary to its result to the Hartman court, and then use the theory to bootstrap to a much more expansive result by declaring it to have precedential value in a case embodying significantly different facts. Nonetheless the majority does just that in the following words:
“Thus, in Hartman, supra, ownership of the stream bed was held to include the exclusive right of fishery in the waters flowing over it. It follows that whoever ‘breaks the close’ — intrudes upon the space above the surface of the land — without the permission of the owner, whether it be for fishing or for other recreational purposes, such as floating, as in this case, commits a trespass.” (Emphasis added.)
In sum, the constitutional language clearly dictates a result opposite to that reached by the majority. Even if the constitutional provision were deemed ambiguous, contemporary concerns with the availability of natural resources for recreation argues for a broad interpretation of the public’s rights in the waters of the state, rather than reliance upon inapplicable case law and common law made irrelevant by the express adoption of a scheme of appropriation.
MR. JUSTICE CARRIGAN joins in this dissent.